Williams v. McDonald.

WASHINGTON B. WILLIAMS, receiver &c.,

*v.*

OWEN T. W. McDONALD.

The charter of a savings bank provided that it should invest no money on
mortgage excepting on real estate " worth at least double the sum invested,
above all encumbrances." A by-law made it the duty of the finance commit-
tee to attend to all applications for loans. The defendant was one of the
managers of the savings bank and also a member of the finance committee.
In 1875, the mortgagor purchased certain lands for $16,200, giving therefor, in
part payment, two concurrent mortgages—one for $9,000, and the other for
$2,000, and another subsequent one to the defendant for $4,000. At the re-

quest of the president of the bank, the defendant, who, for the purpose of taking the mortgage, was about to draw from the bank money of his deposited there, permitted the bank to take the mortgage, and instead of retaining the mortgage himself, assigned it to the bank. There was no satisfactory evidence that the transaction had ever been approved by the finance committee, the defendant testifying that, so far as he knew, it had never been submitted to them. He also testified that the property was then worth $22,000 or $23,000. In 1878, the holder of the $9,000 mortgage began to foreclose it, making the bank a party, and he purchased the property thereunder in February, 1879, for $6,000. A receiver for the bank was appointed in May, 1879, who demanded indemnity from the defendant in 1881.—*Held*, that under the circumstances the defendant, whose conduct in the matter appeared to have been in good faith, was not personally liable for the loss.

Bill for relief. On final hearing on pleadings and proofs.

*Mr. W. B. Williams*, for complainant.

*Mr. T. Ryerson* and *Mr. G. Collins*, for defendant.

THE CHANCELLOR.

This suit is brought by the receiver of the Mechanics and Laborers Savings Bank of Jersey City, to compel the defendant, one of the board of managers of the bank, to indemnify the institution against the loss sustained upon an investment made by it upon a mortgage of real estate in Jersey City. The grounds of the claim, as stated in the bill, are that the defendant, being at the time one of the managers of the bank and also a member of the finance committee, induced the bank unlawfully to invest, for his benefit, $4,000 of its funds in the mortgage in question. The charter of the institution provided that it should invest no money on mortgage excepting on real estate " worth at least double the sum invested, above all encumbrances." A by-law of the corporation made it the duty of the finance committee to attend to all applications for loans. The transaction upon which it is sought to fix the defendant's liability took place in June, 1875, and was as follows : Michael Murphy and his wife had agreed to purchase certain real property in Jersey City, for $16,200. For $11,000 of this sum they were to give two mortgages (concurrent liens), one for $9,000, and the other for $2,000,

and the defendant had agreed to lend them $4,000 on an immediately subsequent mortgage. The defendant went to the savings bank to draw the money to lend to them upon the mortgage. He had on deposit there about $13,000. The president of the bank requested him to let the bank have the mortgage as an investment instead of taking it himself. The reason given was that the bank would thus have the benefit of the difference between the rate of interest which the mortgage bore (seven per cent.) and the rate which the bank paid to depositors, six per cent. To accommodate the bank the defendant acceded to the request, and consequently assigned the mortgage, which had been made to him, to the bank. The money was paid by a check to the defendant's order, which he endorsed. He received no benefit whatever from the transaction. It does not appear that the loan was submitted to the finance committee.

The allegations of the bill that the investment was made through the defendant's procurement, and that he received the money for his own benefit, are not only denied by the answer, but they are disproved. They are most material averments. Without them the case fails; for if what the defendant did was merely to permit the bank to take an investment which he himself proposed to take, the only ground on which the claim of any liability on his part could rest would be the fact that he, being a manager and a member of the finance committee, was aware of the intention of the president to make an unwarrantable investment, and did not prevent or attempt to prevent it. But in the first place, the defendant acted in good faith. He concealed nothing. He had no reason for concealment. Though he thought the property was worth much more than $16,000, he stated to the secretary, before the loan was made and when he first applied for his money to take the mortgage himself, that the property was worth $16,000. He swears he told the president that the mortgage was a second mortgage, and that he did not think the bank would accept it. The president, however, persisted in requesting the privilege of taking the mortgage for the bank, and in reply to the suggestion that it was a second mortgage said that he would "engineer it through," as in view of

the fact that it was a seven-per-cent. mortgage it would be a profitable investment for the bank.    While the president gives a somewhat different version of the transaction from that given by the defendant, he does not undertake to deny the truth of the statements of the latter, and in the most material parts corroborates them.    He says that according to his " general supposition," the investment was laid before the finance committee and approved, but not until after it had been made by him.    There is no satisfactory evidence on that subject.    The defendant says the matter was not laid before the committee, to his knowledge.

There was no record of the proceedings of the committee before November 23d, 1875, and the mortgage was taken very early in June of that year.    The testimony given on the subject by the members of the finance committee, who were sworn for the complainant, is not such as to establish the fact that the loan was not approved by the committee, but it seems very probable that it was not submitted to them ; the president assuming to act in the matter without consulting them.    The president swears that he took the mortgage on the strength of the representations of the defendant that it was "a good one, and that it would be all right."    The latter denies that he made any representations on that head, but if he did so, it appears clearly that he believed the mortgage to be a safe investment, for he proposed to take it himself, and would have done so but for the request of the president that he would, as a favor, permit the bank to take it. There is no evidence that he made any misrepresentation, nor had he any reason to make any.    That it was not a first mortgage evidently did not appear to the president to be a reason why the bank should not take it, and the charter contemplated investments on mortgages which were not the first encumbrance. It prohibited the bank from investing on mortgages, " except on real estate worth at least double the amount of the sum invested, above all encumbrances."    Whether this provision was a proper one or not, is not a subject of consideration in this controversy. It is enough to say that it was made by the legislature.    The investment was not authorized by the charter.    The property was not worth twice as much as the mortgages, which amounted,

in all, to $15,000.  To have warranted the loan under the charter, the property, therefore, must have been worth $30,000.  The defendant says he considered it worth $22,000 or $23,000 ; but it sold for $16,200.  It was a dereliction of duty on his part to permit the bank to make the investment, but since he acted in entire good faith and derived no advantage whatever from the transaction, it would be unjust, under the circumstances, to inflict the loss upon him.  He supposed he was doing the bank a favor by permitting it to take a mortgage as an investment which he proposed to take himself.  He appears to have had reason to believe that the president would obtain the approval of the finance committee.

The breach of trust of which he was guilty was not a fraudulent one.  There was no fraud, in fact, in the matter.  In *Hodges* v. *N. E. Screw Co., 1 R. I. 312, 3 R. I. 9,* it was held that directors of a corporation were not personally responsible for a violation of the charter, where the violation resulted from a mistake as to their powers, provided they acted in good faith and for the benefit of the company, and the mistake did not proceed from a want of ordinary care and prudence.  The mortgage, in the case in hand, was payable in one year, and consequently came due in June, 1876.  On the 25th of June, 1875, but a few days after the bank took the mortgage, the mortgagors paid $1,000 on account of the principal of it, and they paid the interest down to November 1st, 1877.  About six months after they paid the $1,000 they paid $500 on account of the principal of the $2,000 mortgage.  In April, 1878, Stephen S. Southard, the holder of the $9,000 mortgage, began suit in this court for foreclosure of his mortgage.  The bank was a party to the suit.  Its mortgage had then been due almost two years, and it had taken no steps to collect it.  Under execution issued on the final decree in that cause, the property was sold February 6th, 1879, and bought by Southard for $6,000.  The bank suspended payment in November, 1878, and the receiver was appointed in May, 1879.  No demand was ever made upon the defendant to indemnify the bank against loss on the mortgage before the foreclosure, nor was any made afterwards to indemnify it against the

loss it had sustained on the investment until December 22d, 1881, nearly three years after the sheriff's sale, when demand was made by the receiver. The claim of the bill is not based merely on the violation of the charter in making the loan, but on the allegation that for his own benefit the defendant induced the bank to make the investment in violation of the charter. Had these allegations been proved, the case would not have differed essentially from that of *Williams* v. *Riley, 7 Stew. Eq. 398.* There the defendant was treasurer of the same bank. He sold a house and lot in 1869 for $5,000, of which $2,000 were paid in cash, and a mortgage given to him for the balance. He assigned the mortgage to the bank in 1873. The property then was not worth more than from $3,500 to $4,000. The investment was not submitted to the finance committee, but was made by him and the president. Riley took the money from the funds of the bank on a check drawn by himself as treasurer. The property was sold for $1,000 under foreclosure, after the appointment of the receiver. Soon after the receiver was appointed he tendered the bond and mortgage (the latter was then in course of foreclosure) to Riley, with a re-assignment thereof to him, and demanded of him the $3,000, and so much of the interest thereon as had not been collected by the bank, but he refused to comply with the demand. The receiver also afterwards gave him notice of the sale under the execution, so that he might protect himself. In this case the defendant appears not only to have acted in good faith but, as he supposed, for the benefit of the bank. No complaint of the transaction was made until nearly three years after the property had been sold. Under the circumstances it would be inequitable to hold him liable to indemnify the bank against the loss. The bill will be dismissed, but without costs.